# Barclay's Appeal.

1. It is well settled in the equity practice of Pennsylvania that a court cannot by bill bring before it parties having adverse claims to land, and between whom there are no relations of trust or contract, and settle their several titles by decree.

2. While this might be a convenient and speedy method to settle title the Statute of Limitations interposes, and a claimant cannot be compelled to assert his right or test his claim within a time less than the statutory period.

3. A bill in equity alleged that the complainant owned premises adjoining those of defendant, and that the latter permitted certain machinery to remain upon complainant's premises, and when notified to remove the same claimed the right to have the machinery there, and that complainant was apprehensive that he would be involved in litigation, and, therefore, prayed for a decree for the removal of the machinery. *Held*, that a court of equity had no jurisdiction.

January 30th 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. GREEN, J., absent.

Appeal from the Court of Common Pleas, No. 2, of *Philadelphia county*: Of January Term 1879, No. 126. In Equity.

Bill in equity filed by Conrad S. Grove against A. Charles Barclay and John K. Barclay.

The bill in substance avers that defendant A. Charles Barclay and wife, by deed of June 20th 1873, conveyed to plaintiff property No. 136 North Delaware avenue, running through to Water street, and being No. 129 Water street; that at the time of that conveyance there was and still remained in said building a large quantity of heavy and other machinery, belonging to defendants, or one of them; that on December 17th 1873, plaintiff notified defendants to remove the machinery by December 29th, or he would sell it at public sale; that on December 19th 1873, in

[Barclay's Appeal.]

answer thereto, he received a letter from the attorney for defendant John K. Barclay, alleging that he, plaintiff, knew of certain complications, not therein stated, between the two defendants, and threatening to hold him responsible for John K. Barclay's interest in the real estate and machinery; that plaintiff is a bona fide purchaser; that said John K. Barclay had no legal nor equitable title to the real estate; that complainant had reason to fear, from the tenor of the letter, that he might at some future time become involved in litigation in respect to the same, when witnesses should have died; that the defendants continue to permit the machinery to remain on the plaintiff's premises; that the machinery is very cumbersome and requires spacious room for storage; that the plaintiff has no certain knowledge of the respective interests of the defendants in the machinery, and it is unjust that it should cumber his property, or that he should be put to the trouble and expense of an action for damages for removing it, and the removal and storage would be expensive; and that by reason of there not being a contract respecting the time the machinery should remain or as to compensation for storage, plaintiff has no adequate remedy at law. The bill prays 1. That defendant John K. Barclay may be decreed to make all his claim against the plaintiff as to the realty in this suit. 2. That it may be decreed that plaintiff has a good and valid title. 3. That defendants shall remove the machinery, and in default thereof, that it may be sold. 4. Reasonable compensation for storage. 5. General relief.

An "amendment by way of addition to original bill" was filed. It was in the nature of a bill of revivor, and set forth the proceedings in the cause to that time, averring that the plaintiff died intestate, on September 28th 1874, and substituting as plaintiffs both his administrator and also his heirs at law.

The defendant A. Charles Barclay allowed the bill to be taken *pro confesso.*

Defendant John K. Barclay filed a demurrer and answer, by which he (1) demurred for want of equity in the bill, and (2) not waving the demurrer, admitting the most of the material allegations of fact in the bill, except that plaintiff is a bona fide purchaser, and that defendant was in any respect in default, avers that he is the owner of store 127 North Water street (adjoining the plaintiff's), containing a large quantity of costly machinery connected with that in No. 129, and dependent on it for its motive power; that the machinery in the two stores was erected while they were both owned by Andrew C. Barclay, father of the two defendants, who at the same time sold No. 129 to A. Charles, and 127 to John K., and the machinery in 129 to the two jointly, for which they gave their joint bond for $16,000; that a suit in equity had been brought by A. Charles against John K., and was then pending before a master, which would determine the owner-

[Barclay's Appeal.]

ship, &c., of the machinery; that Conrad S. Grove, the original plaintiff, was one of the witnesses for A. Charles before his purchase, and bought with full notice and knowledge of the complications, and his rights are no greater than those of A. Charles; that this suit is brought in the interest of A. Charles, and to embarrass that suit; that defendant has repeatedly offered to buy or sell at prime cost, and now offers to sell, if he has any ownership; and that No. 129 is a complete linseed-oil mill, machinery, smoke-stack, &c., being very expensive, and the machinery in No. 127 can only be used as an adjunct thereto.

The master, Simon Gratz, Esq., reported the facts and the following decree, which was adopted by the court:

1. That the plaintiff, Conrad S. Grove, was a bona fide purchaser for value, of the real estate and premises No. 129 North Water street, described in his (said plaintiff's) bill, without notice of the existence of any easement, license, or state of facts, by or under which the defendants, John K. Barclay and A. Charles Barclay, or either of them, or any owner of the premises No. 127 North Water street, might or could claim any right or interest in said premises No. 129 North Water street; and that said premises No. 129 North Water street are not subject to any such easement or license.

2. That the defendants have not, nor has either of them, any right, title or interest, in or to the said real estate and premises No. 129 North Water street.

3. That the defendants shall, within     days from the date of this decree, remove, or cause to be removed, from said premises No. 129 North Water street, the following named items of machinery, now therein, belonging to said defendants, or one of them, viz.: the engine, fly-wheel, boilers, shafting, oil-pipes, heaters, tubes, crushers, presses, iron tanks, rolls and pulleys, hoisting apparatus connected with the elevator, in No. 127 North Water street, and pumps. And that, failing to remove, or to cause the removal of, said items of machinery within said time, the plaintiffs may cause the same to be sold at public auction, and the proceeds of such sale, after deducting all charges and expenses incident thereto, shall be paid over to the defendants, or either of them.

4. That the defendants shall pay to the plaintiffs, as compensation for the use of said premises for the storage of said machinery the sum of $5666.75.    5. That the said John K. Barclay shall pay the costs of the proceedings.

The latter then took this appeal alleging that the court erred in making this decree.

*J. Howard Gendell*, for appellant.—There is no valid reason for transferring the jurisdiction over this controversy from a court

[Barclay's Appeal.]

of law to a court of equity. The rights claimed on both sides are purely legal in their nature, and ought to be determined by a court of law. One of the prayers of the bill is for compensation for the use of the plaintiff's premises by the defendants by the storage of their machinery, &c., therein, and under this prayer a decree has been made for the payment of $5666.75. It seems sufficiently obvious that a bill cannot be maintained for a mere money demand for storage. Equity jurisdiction in this state depends upon express statute: Dohnert's Appeal, 14 P. F. Smith 311. The complainant has shown no statutory authority for this bill. The sole reason of the jurisdiction invoked, is that the plaintiff being in possession, or not entitled to the present possession, has no legal right of action at all; but *cessante ratione cessat et ipsa lex.* On what theory are the plaintiffs entitled to damages? Simply that the Barclays, having no right whatever justifying them, persist in leaving machinery, &c., on Grove's property. A suit at law for these damages will, therefore, directly raise all the questions in dispute.

*John G. Johnson* and *George W. Thorn,* for appellees.—By the Act of 16th June 1836, Bright. Purd. 591, pl. 5, equitable jurisdiction is extended to "the prevention or restraint of the commission or continuance of acts contrary to law, prejudicial to the interests of the community, or the rights of individuals." By the same act, Id., pl. 6, it is also extended to "the affording specific relief when the recovery in damages would be an inadequate remedy." The continued retention of this machinery in the premises of the appellee was prejudicial to his rights, and specific relief was needed because a recovery in damages was inadequate. The appellant objects to the right of the court to award compensation for the damages to which he subjected the complainant by continuing to maintain his machinery in the premises until the date of the decree. This retention was a permanent, continuing use and occupation of the plaintiff's premises, which entitled him to relief in equity. The jurisdiction thus obtained, it was competent for the court to administer relief for the damages occasioned by the act complained against: Allison's Appeal, 27 P. F. Smith 227; Mason's Appeal, 20 Id. 26; Fessler's Appeal, 25 Id. 502.

Mr. Justice GORDON delivered the opinion of the court, March 1st 1880.

We cannot understand upon what theory, or principle of equity, the learned judge of the court below entertained the bill which we now have before us. Conrad S. Grove, the appellee, purchased lot No. 129 from A. Charles Barclay; the title, for aught that appears to the contrary, seems to be perfectly good, and if it were not so, a decree by a court in equity would not help it. If there is any-

thing certain in the equity practice of Pennsylvania, it is, that a court cannot by bill bring before it parties having adverse claims to land, and between whom there are no relations of trust or contract, and settle their several titles by decree. The bill leaves us in ignorance as to the nature and character of John K. Barclay's claim, but no matter, it was a claim to or in the realty, if anything, and whether it should assume the form of an easement, or a right in the fee, was of no consequence, as in either case the claim was of an adverse legal right determinable at law and not in equity: North Pennsylvania Coal Co. *v.* Snowden, 6 Wright 488; Long's Appeal, 11 Norris 171. If it be said that Grove was in possession, and, therefore, could not bring ejectment in order to test the appellant's claim, it may be answered, the goods of the partnership were upon the premises before his entry, and if either of the partners claimed to have them there of right, there was nothing to prevent the appellee from testing that right by ejectment. But more than this; we know of no power in equity, or elsewhere, by which the owner of an adverse title can be called into court, by the party in possession, to assert and defend that title, on penalty of forfeiture should he refuse so to do. This might be a very convenient and speedy method of settling title, and much might be said in its favor; but as the statute interposes and allows such claimant twenty-one years within which to prosecute his claim, we do not see how he can be compelled to assert his right, or test his claim, within a time less than this statutory period. Of course, a different rule prevails in cases of trust, for there a chancellor has full jurisdiction over the parties, and may compel a trustee not only to surrender a deed to his cestui que trust, but also to execute, if needs be, such an instrument, or he may be restrained from selling the trust property, or from doing anything prejudicial to the estate committed to his charge. In such case the court has the most ample power to settle title, and all things else, for the preservation of the trust estate: O'Neil *v.* Hamilton, 8 Wright 18. But John K. Barclay was not a trustee for Conrad S. Grove; whatever right he claimed was independent and adverse, hence equity had jurisdiction neither of the persons nor rights of the parties. This part, then, of the plaintiff's bill fails, and must be dismissed from further consideration. Then, there is the further complaint, that his property was cumbered by the machinery of the defunct firm of Barclay & Barclay. But as to this, what right could a court of equity help the plaintiff to that he did not already possess? This firm of Barclay & Barclay was the successor of Boyer & Barclay, which latter named firm held under a lease for five years from Andrew C. Barclay, the vendor of John K. and A. Charles Barclay. If, then, these parties were tenants holding over, the remedy of the appellant was ample under the Landlord and Tenant Acts; on

[Barclay's Appeal.]

the other hand, if they had abandoned the occupancy of the premises, he had but to remove their goods and charge them with the expenses necessary to effect such removal. And what other or further power could a court of chancery confer on him? Both law and equity, as far as possible, avoid vain things; they do not attempt to help a man to what he has already got.

The truth of this case seems to be, that the appellee, alarmed by Barclay's ambiguous threat, has endeavored to interpose the decree of a court between himself and the possible consequences of the exercise of his own right. This, however, he cannot do. A trustee may seek the advice and protection of a court of equity, but such is not the right of an ordinary person. Such an one must take the risk of the assertion of his own rights, or leave them unasserted.

A faint attempt has been made to put this case on the ground of a continuing nuisance or trespass, and so to bring it within the ruling of Stewart's Appeal, 6 P. F. Smith 413, and kindred cases. This, however, has proved a failure, since there was here no such continuing nuisance as equity would interpose to abate, and that for the sufficient reason, that the nuisance or obstruction was one from which the appellee, by his own act, could have relieved himself. Equity will not, therefore, help him to do that which he might have done of his own motion.

> The decree of the court below is now reversed and set side; the plaintiff's bill is dismissed, and it is ordered that the costs be paid by the appellee.